**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| PAUL CHERI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-17-303-JHP-KEW |
| ) | |
| COMMISSIONER OF THE SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Paul Cheri (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 51 years old at the time of the ALJ's decision. Claimant completed his education through the eleventh grade. Claimant has worked in the past as a derrick operator and floor hand. Claimant alleges an inability to work beginning June 1, 2012 due to limitations resulting from seizure disorder and status post loss of three fingers.

### Procedural History

On December 23, 2013, Claimant protectively filed for

disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On June 1, 2016, Administrative Law Judge ("ALJ") Angelita Hamilton conducted an administrative hearing in Oklahoma City, Oklahoma. On June 29, 2016, the ALJ issued an unfavorable decision. On June 8, 2017, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She determined that while Claimant suffered from severe impairments, he retained the RFC to perform light work with limitations.

### Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to weigh the opinion of the consultative examiner; and (2) failing to reach a proper RFC.

### Consideration of the Opinion Evidence

In her decision, the ALJ determined Claimant suffered from the severe impairments of status post loss of three fingers on the non-dominant left hand and a history of seizures. (Tr. 23). The ALJ

concluded that Claimant retained the RFC to perform light work except Claimant should only occasionally use his upper left extremity for handling and fingering. Also, Claimant should never climb ladders, ropes, or scaffolds and he should never have exposure to hazards such as hazardous moving machinery, raw chemicals or solutions, and unprotected heights. (Tr. 28).

After consulting with a vocational expert, the ALJ concluded Claimant could perform the representative jobs of furniture rental clerk, parking lot attendant, and car wash attendant, all of which were found to exist in sufficient numbers in both the regional and national economies. (Tr. 32). As a result, the ALJ found Claimant was not under a disability from December 23, 2013, the date the application was filed. Id.

Claimant contends that the ALJ failed to properly weigh the opinion of Dr. Ronald Schatzman, a consultative examining physician. Dr. Schatzman examined Claimant on April 1, 2014. Claimant reported seizures which occurred once or twice per month resulting in a loss of consciousness and alternation of awareness. He was not on any medication for seizures and had not had an EEG in the past year. (Tr. 509). Dr. Schatzman found Claimant to be unkempt and incoherent but his speech was 100% intelligible. His thought processes appeared normal. Claimant was found to have lost three fingers on his left hand from his left index to his ring finger.

(Tr. 510).  Claimant's spine was non-tender with full range of motion.  Straight leg raising was negative.  Claimant's gait was safe and stable with appropriate speed, heel/toe walking was normal, and tandem gait was within normal limits.  Dr. Schatzman assessed Claimant with seizure disorder by history secondary to subdural hematoma, tobacco abuse, partial amputation of the fingers of his left hand, and hypertension.  (Tr. 511).

Dr. Schatzman also completed a Report of Examination for Seizure Disorder form.  He set forth Claimant's statement that he experienced seizures once or twice per month with the most recent seizure occurring four months prior in November of 2013.  Claimant told Dr. Schatzman that the seizures lasted "a minute or two."  The sequelae of the seizures was a disturbance in equilibrium and cold sweats.  He suffered a loss of consciousness and alternation of awareness during the seizures. Dr. Schatzman indicated Claimant was not on medication for the condition and has not had a recent EEG. During seizures, Claimant indicated his eyes roll back into his head.  (Tr. 508).

The ALJ acknowledged Dr. Schatzman's report in her decision and his diagnoses.  She determined that Claimant was not taking medication for his hypertension and that there was no indication that the condition could not be controlled with medication or diet. She noted Dr. Schatzman's finding that Claimant had lost three

6

fingers on his left hand but concluded that, otherwise, the objective physical examination was unremarkable. The ALJ stated that Dr. Schatzman found no limitations in Claimant's extremities other than the finger amputation, which caused limitations in fingering and handling but did not completely preclude the use of the left hand. (Tr. 25-26).

The ALJ indicated at step two that Claimant suffered from a history of seizures "which individually and/or in combination [with his finger loss] are severe." (Tr. 23). She discussed Claimant's testimony concerning his seizures and Dr. Schatzman's notation of historical seizures incident to a subdural hematoma. (Tr. 24). She also discussed in detail the medical records addressing Claimant's seizure activity and determined that objective medical reporting did not indicate continued seizure activity observable by medical personnel. Indeed, Claimant took medication for the condition after his surgery for a subdural hematoma but that the medication was discontinued. He reported a few incidents thereafter but had not undergone any further treatment for the condition and denied any further seizure activity to his physician after January 7, 2013. The ALJ found that such sporadic reporting and treatment was not consistent with a severe seizure condition as alleged by Claimant.

Claimant asserts that the ALJ did not properly weigh Dr. Schatzman's opinion with regard to his seizure condition. Dr.

7

Schatzman did not render an opinion on the effects of Claimant's seizure activity based upon objectively observed conditions. Rather, he merely reiterated Claimant's stated complaints regarding the condition and its effects on the Report of Examination for Seizure Disorder. While the ALJ did not expressly state the weight given to Dr. Schatzman's opinion, it is apparent that he gave little weight to any opinion which reflected a limitation based upon Claimant's seizure activity. *See* Ocequera v. Colvin, 658 Fed. Appx. 370, 374 (10th Cir. 2016). The ALJ was thorough in her recitation of the medication evidence concerning Claimant's seizure condition and reasonable in her conclusions that the condition did not significantly restrict Claimant's ability to engage in basic work activity. As a precaution, the ALJ did limit Claimant's exposure to hazards in the workplace in the RFC which adequately addressed the supported effects of Claimant's condition.

This Court would point out that Claimant's position that Dr. Schatzman's opinion, to the extent one was rendered on Claimant's seizure condition, was entitled to controlling weight is legally erroneous. Only the opinion of a treating physician is entitled to such weight. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003). Dr. Schatzman was a consultative source and his opinions would never be entitled to controlling weight under the regulations.

8

**RFC Determination**

Claimant also contends the ALJ failed to include sufficient limitations in the RFC for his finger loss. The ALJ restricted Claimant to only occasional use of his upper left extremity for handling and fingering. (Tr. 28). She recited Dr. Schatzman's report in finding no manipulative restrictions in Claimant's right hand and the fact he had grip strength of 5/5 bilaterally, which the ALJ concluded that the grip strength with his remaining fingers on his left hand was 5/5. The ALJ determined that no objective medical evidence supported a finding that Claimant was "entirely unable to use his left hand for handling and/or fingering." (Tr. 26).

The ALJ also gave "great weight" to the physical assessments of Dr. Donald Baldwin and Dr. Mark Walker, both consultative reviewing physicians. (Tr. 30). Dr. Baldwin concluded Claimant could perform the functional requirements for light work, except that he was limited to infrequent fine manipulation of the left hand and since the thumb and little fingers are significantly involved in handling, Dr. Baldwin restricted Claimant to occasional handling with the left hand. (Tr. 135-36). Dr. Walker similarly found Claimant could perform light work except he limited Claimant to infrequent fine manipulation and only occasional handling with the left hand. (Tr. 146-47).

Claimant contends the ALJ should have found Claimant could engage in no handling or fingering with his left hand. He offers no objective medical support for such a finding, other than anecdotally states, "How is he to finger at all on the left - with his thumb and pinky? He cannot be expected to grasp or handle with his left hand, and certainly not occasionally."

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional

capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's RFC assessment, generally, and limitation on fingering and handling, specifically, were supported by substantial evidence.

Claimant also states that the vocational expert's testimony was in conflict with the *Dictionary of Occupational Titles ("DOT")*. He first states the *DOT* does not distinguish between hands and then concludes that because the *DOT* "does not speak to hands or fingers missing, the VE testimony could not have been consistent." This argument incorporates a *non sequitur*. Under Claimant's reasoning, if a person is missing a digit, he cannot be employable under the job listings in the *DOT* and any testimony by a vocational expert to the contrary is in conflict with the *DOT*. Of course, Claimant offers no legal support for such a position. Indeed, silence in the *DOT* as to a particular limitation in a job listing does not give rise to a conflict between the *DOT* and vocational testimony. *See* Wahpakeche v. Colvin, 640 F. Appx. 300, 304 (10th Cir. 2016). This Court finds error in the questioning of the vocational expert and no conflict between the *DOT* and vocational expert's testimony with regard to fingering and handling of the left hand.

Claimant also contends the ALJ failed to include all of his limitations in his questioning of the vocational expert. He asserts

that he had a limited education and that factor should have been included in the hypothetical questioning of the vocational expert. The expert was present during Claimant's testimony and it is presumed that she was aware of Claimant's background information such as age and education. *See* Welch v. Chater, 1996 WL 563856, *3 (10th Cir. 1996)(unpublished).

Claimant asserts the inclusion of such a limitation would have limited the vocational expert to jobs with a Specific Vocational Preparation ("SVP") level of 1 rather than 2. Individuals with a "limited education" are generally presumed to be capable of performing unskilled work, which would include the jobs identified by the vocational expert in this case. *See* Richards v. Colvin, 640 F.Appx. 786, 789 (10th Cir. 2016)(unpublished).

Claimant proceeds through the final three pages of his brief arguing that the ALJ failed to incorporate certain unspecified severe and non-severe impairments in the step four and five analysis. This argument is either a reiteration of the same arguments previously made in the brief or is sufficiently undeveloped to render it impossible for this Court to address sufficiently on the briefing provided. This Court finds no error in the RFC or the step five analysis.

**Conclusion**

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 16th day of July, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE